1
2
3
UNITED STATES DISTRICT COURT
4
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
5
6 CINDY JO JOHNSON,

7                                    Plaintiff,          Case No. 3:10-cv-05649-RBL-KLS

8        v.                                              REPORT AND RECOMMENDATION

9 MICHAEL J. ASTRUE, Commissioner of                    Noted for July 22, 2011
   Social Security,
10
11                                   Defendant.

12

13         Plaintiff has brought this matter for judicial review of defendant's denial of her

14 application for disability insurance benefits.  This matter has been referred to the undersigned

15 Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

16 authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing

17 the parties' briefs and the remaining record, the undersigned submits the following Report and

18 Recommendation for the Court's review, recommending that for the reasons set forth below,

19 defendant's decision to deny benefits should be reversed and this matter should be remanded for

20 further administrative proceedings.

21
22                          FACTUAL AND PROCEDURAL HISTORY

23         On February 27, 2007, plaintiff filed an application for disability insurance benefits,

24 alleging disability as of September 1, 2005, due to spinal problems, depression and irritable

25 bowel syndrome.  See Administrative Record ("AR") 17, 62, 85.  Her application was denied

26 upon initial administrative review and on reconsideration.  See AR 17, 42, 47.  A hearing was

REPORT AND RECOMMENDATION - 1

held before an administrative law judge ("ALJ") on August 17, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 368-94. Also at the hearing, plaintiff amended her alleged onset date of disability to August 1, 2006. AR 17, 374.

On September 22, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> Tr. 17-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 13, 2010, making the ALJ's decision defendant's final decision. <u>See</u> AR 5; <u>see also</u> 20 C.F.R. § 404.981. On September 10, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> ECF #1. The administrative record was filed with the Court on November 16, 2010. <u>See</u> ECF #17. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; (3) in assessing her residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.       The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    <u>Dr. Mecouch</u>

The record contains a psychiatric evaluation report submitted by George Mecouch, D.O., in mid-May 2007, who diagnosed plaintiff with a recurrent major depressive disorder "currently

with residual symptoms," "[p]sychological factors affecting physical illness" and an "[o]piate addiction currently in remission." AR 191. Dr. Mecouch also assessed plaintiff with a global assessment of functioning ("GAF") score of 48, the highest in the past year being 45 to 50.[1] See id. He stated that while she "had a severe motor vehicle injury in August of 2006," leaving her with "ongoing chronic pain issues," he would "defer to her physical physicians" as to whether this "prevent[ed] her from gainful employment." Id. Dr. Mecouch did feel, however, that "at this time, it would be difficult for plaintiff to hold full time employment until her chronic pain, and emotional issues" were "under better control." Id.

The ALJ in this case gave "little weight" to Dr. Mecouch's opinion concerning plaintiff's ability to work, stating specifically that Dr. Mecouch had "not treated [plaintiff] for chronic pain and he noted that [she] did not demonstrate pain behavior during his evaluation" of her. AR 26. In addition, the ALJ found that plaintiff's "subsequent surgery resulted in improvement in her condition," and that "[d]espite reports that she was 'tearful' during the evaluation, she performed well on mental status examination." Id. Although plaintiff argues these are not valid reasons for rejecting Dr. Mecouch's opinion, the undersigned disagrees.

First, plaintiff asserts that in pointing out Dr. Mecouch did not treat her for chronic pain and that subsequent surgery improved her condition, the ALJ failed to take into account the fact that he diagnosed her with psychiatric factors affecting physical illness, which plaintiff equates with "a psychological pain disorder." ECF #18, p. 5. Such a disorder, plaintiff goes on to argue,

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."); England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

is significant, because "it provides an explanation for [her] . . . allegations of pain." Id. Whether the above two diagnoses are one in the same – a determination the undersigned is not qualified to make, and therefore declines to do so – what is most relevant here is that Dr. Mecouch himself stated he was deferring to plaintiff's "physical physicians" the question of whether her "chronic pain issues" prevented her from engaging in "gainful employment."[2] AR 191. The ALJ thus was not remiss in discounting Dr. Mecouch's opinion to the extent it was based on plaintiff's chronic pain issues and the effect thereof on her functioning.

The ALJ, furthermore, noted that plaintiff demonstrated no pain behavior during the time Dr. Mecouch evaluated her, and that she performed well on her mental status examination. See AR 26; see also Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician, if that opinion is not adequately supported by clinical findings); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. In addition, the ALJ pointed out as well that surgery performed subsequent to Dr. Mecouch's evaluation "resulted in improvement in her condition." AR 26; see also AR 194-95, 353; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician, if that opinion is not adequately supported by record as whole); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.

B.      Dr. Powell

Plaintiff was evaluated on June 2, 2009, and June 19, 2009, by James B. Powell, Psy.D., who diagnosed her with a moderate, recurrent major depressive disorder and an anxiety disorder. See AR 343. As did Dr. Mecouch, Dr. Powell assessed plaintiff with a GAF score of 48. See id.

---

[2] Plaintiff argues in her reply brief that defendant's assertion that Dr. Mecouch did not actually diagnose her with a psychological pain disorder is impermissible, as it was not advanced by the ALJ in his decision. The undersigned finds plaintiff's argument here to be disingenuous, given that it is plaintiff who raised the issue of equating what Dr. Mecouch actually diagnosed her with – i.e., psychological factors affecting physical illness – with a psychological pain disorder. Defendant's counter argument – and a valid one at that – merely was made in response thereto. As such, no improper post hoc rational was put forth by defendant. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).

In addition, Dr. Powell opined that there was "likely a marked level of impairment in the area of socialization" and "likely more of a marked level of impairment with regard to the management of activities of daily living." AR 343-44. Dr. Powell further opined in relevant part:

> . . . At this point, [plaintiff] does not appear to be able to independently support herself in gainful employment. . . .
>
> . . .
>
> In my opinion, the duration of rehabilitation to the point that [plaintiff] would be able to maintain full-time work activity, even in a simple, unskilled job setting, will be at least a period of 12 months. She indicates that during the end of her last nursing job, she was calling in on the average of two to three times a month, which would likely continue if she were to try to work at this time, in my opinion. Barriers to employment at this time would likely include distractions related to episodes of physical pain and a decrease in drive and motivation and energy that would be related to major depression, in my opinion. The prognosis for her being able to maintain employment in the future is considered to be good from a psychological perspective, but will likely depend upon the course of her medical condition, as well as her follow-through with treatment recommendations and her response to therapeutic intervention.
>
> . . .
>
> . . . It is . . . recommended that upon further stabilization of her medical and mental health conditions that she become involved in a vocational rehabilitation process that would help her move toward future employment.

AR 344-45.

The ALJ addressed Dr. Powell's opinion as follows:

> I have also considered the opinion of Dr. Powell that the claimant had a GAF of 48 ("serious" symptoms) at the time of his evaluation in June 2009 and her mental impairment results in "marked" restriction of activities of daily living and "marked" difficulty in maintaining social functioning and that she would be unable to maintain full-time work activity even in a simple unskilled job setting for a period of at least 12 months. (Exhibit 14F/211-212). However, little weight is given to that opinion. The claimant's restrictions of activities of daily living appear to be limited primarily due to pain related to physical rather than mental impairments. She also appears capable of maintaining routine social functioning, although she often chooses to isolate. Dr. Powell noted that his opinion regarding her ability to sustain employment was based

in part on the claimant's report that she had been calling in an average of two to three times per month at the end of her last nursing job and he expected that trend to continue. However, the claimant testified at the hearing that she finally quit her job because she was unable to handle the psychological stress of her co-workers attitude towards her "promotion" to a desk job after a history of diverting medications. Such stress would not be expected to be present in jobs other than her past employment at the convalescent center. Although it is credited that the claimant likely experiences some pain and a decrease in drive, motivation and energy, there is no indication she would be unable to sustain a simple, unskilled job.

AR 26. The undersigned agrees with plaintiff that these are not valid reasons for rejecting the opinion of Dr. Powell.

First, while plaintiff largely has reported being limited in her daily activities because of physical problems (see AR 86, 95, 101-08, 110, 113, 119, 190, 336), the record also indicates a significant mental functional component as well (see AR 86, 103-07, 110, 335-36, 385). It is not clear from the ALJ's stated findings, though, that adequate consideration was given to this latter component. See AR 26. In addition, while the record indicates plaintiff has been fairly limited in social functioning (see AR 86, 101, 105-06, 190, 335-36), again it is unclear that such limitation is because she "chooses" to do so (AR 26), as opposed to such isolation being due to her mental impairments. Nor is it clear exactly what the ALJ means in stating plaintiff "appears capable of maintaining *routine* social functioning" (id.), given that her social contact seems largely limited to her husband and some other family members. See AR 101-02, 104-05, 190, 335-36.

Finally, the undersigned agrees with plaintiff that the ALJ's statement that she would not be expected to experience the same specific basis for the stress she faced in her prior nursing job in other future jobs, fails to properly account for the psychological factors at play in this case that likely would impact her ability to perform other work. Indeed, not specifically noted by the ALJ, but as set forth above, Dr. Powell went on to also expressly opine that "[b]arriers to employment at this time would likely include . . . a decrease in drive and motivation and energy that would be

related to major depression." AR 344.  Accordingly, at least in terms of mental impairments and limitations, Dr. Powell's opinion was not limited to plaintiff's self-report concerning the type of stress she experienced in her prior nursing job.

C.      Dr. Peterson and Dr. Eather

A mental residual functional capacity assessment form was completed by Anita Peterson, Ph.D., in early June, 2007, in which she checked boxes indicating that plaintiff was moderately limited in several areas in the domain of concentration, persistence or pace, as well as in one area in the domain of adaptation. See AR 152-53.  Dr. Peterson further concluded in relevant part in a separate section of that form as follows:

> . . . [Plaintiff] is capable of performing simple repetitive tasks and persisting for 2 hours.
>
> . . . [Plaintiff] is capable of relating appropriately to a supervision [sic] and coworkers in a mostly nonpublic setting. . . .
>
> . . . [Plaintiff] is able to . . . be aware of normal hazards and take appropriate precautions.  Chronic pain and anxiety intermittently affect stress tolerance.
>
> [Plaintiff]'s allegations are partially credible in that she does have a mental health [diagnosis], however, her functional limitations do not meet listing level criteria, nor do they preclude all work activity.  [Plaintiff] is capable of [simple routine tasks], mostly nonpublic.

Tr. 154.  These findings were affirmed by Bruce Eather, Ph.D., in late July 2007. See AR 132.

The ALJ stated that he was giving "significant weight" to the opinions of Drs. Peterson and Eather "to the extent that [plaintiff was] limited in her ability to deal with the public," but that he was not giving "full weight" to the moderate limitations in regard to her ability to sustain concentration, persistence or pace they found, or to their determination that she was restricted to simple, routine tasks. AR 26; see also AR 148, 152-54.  Instead, in regard to the latter, the ALJ stated he gave "greater weight to the opinion of Dr. Powell that [plaintiff's] mental impairments

result[ed] in only mild concentration deficits," which the ALJ found to be consistent with the substantial evidence in the record. AR 26.

Plaintiff argues the ALJ's reliance on Dr. Powell's opinion here was improper, given that Dr. Powell ultimately concluded that she would be unable to perform simple, unskilled work for at least 12 months. See AR 344. The undersigned agrees the ALJ erred here. The ALJ, as noted above, specifically rejected the conclusion of Drs. Peterson and Eather that plaintiff was limited to simple, routine tasks on the basis that Dr. Powell found only mild deficits in plaintiff's ability to concentrate. But given that, as pointed out by plaintiff, Dr. Powell also found a restriction in her ability to perform such tasks – indeed, a far more significant one – it is difficult to determine the actual basis for the ALJ's reliance on Dr. Powell's concentration finding to reject the far less severe restriction regarding such tasks noted by Dr. Peterson and Dr. Eather.

Defendant argues the ALJ was not required to incorporate the moderate mental functional limitations checked off by Drs. Peterson and Eather in the form they completed, in light of the command contained in the Social Security Administration's Program Operations Manual System (the "POMS") that adjudicators are to only consider the narrative conclusions provided by the medical source completing the form.[3] But in this case the ALJ himself expressly considered and rejected the moderate limitations found by Dr. Peterson and Eather in regard to concentration,

---

[3] The POMS provides in relevant part as follows:

> **NOTE**: The purpose of section I ("Summary Conclusion") on the [MRFC form] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of [the MRFC form] **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

POMS DI 25020.010(B)(1) (emphasis in original); Ware v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006) (recognizing POMS as "persuasive authority," even though it "does not have the force of law").

REPORT AND RECOMMENDATION - 10

persistence and pace. See AR 26. In any event, the relevant issue here is the ALJ's rejection of their restriction to simple, routine tasks on the basis of those limitations, and not necessarily on the fact that the limitations themselves were checked on the form. Lastly, although defendant argues the ALJ properly rejected Dr. Powell's opinion that plaintiff could not perform simple, unskilled work – and therefore properly relied on the mild deficits in concentration Dr. Powell found – as discussed above, the ALJ erred in doing so.

D.    Dr. Hoskins

Plaintiff further challenges the following findings made by the ALJ:

> . . . I have given significant weight to the opinion of [Robert Hoskins, M.D., (AR 124-31, 135)] that the claimant remains able to perform light work involving frequent fine manipulation (Exhibits 1F and 4F). However, medical records do not fully support a finding that the claimant has consistently had limitation in overhead reaching on the right (Exhibit 1F/1). . . .

AR 25-26; see also AR 131 ("Right overhead reach is limited to occasional and right handle and finger is limited to frequent."). Plaintiff argues the ALJ rejected the limitation in right overhead reaching without adequate explanation. The undersigned disagrees. As noted above, the ALJ specifically pointed to a lack of support in the medical evidence in the record for the conclusion of Dr. Hoskins that such a limitation exists. The undersigned finds the substantial evidence in the record supports the ALJ here. See AR 156, 161-65, 168-70, 173-77, 179-80, 184, 194-201, 213, 216-17, 220-22, 224, 227, 230, 233-235, 237, 240, 242-44, 353, 356. Plaintiff, furthermore, points to nothing in the record that contradicts the ALJ's finding, nor has she specifically argued how the ALJ's explanation was inadequate in this case.

II.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this

REPORT AND RECOMMENDATION - 11

credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. <u>See</u> <u>id.</u> at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see</u> <u>also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

In this case, the ALJ discounted plaintiff's credibility in part because the record reveals improvement in plaintiff's physical symptoms with treatment and surgery, and in part because the medical evidence in the record regarding plaintiff's physical impairments is inconsistent with plaintiff's allegations of disability. <u>See</u> AR 23. These are both valid reasons for discounting a

claimant's credibility. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility due to medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (same); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy the clear and convincing requirement). The record, furthermore, largely supports the ALJ's findings here. See AR 156, 161-65, 168-69, 173-75, 177, 179-80, 194-201, 210, 213, 216-17, 220-22, 224, 227, 230, 233-35, 240, 242-44, 353, 356. In arguing the ALJ erred in so finding, plaintiff cites several instances where she received diagnoses and diagnostic studies, as well as treatment for her reported symptoms, but mere diagnoses or mere existence of symptoms and treatment therefor is insufficient to establish disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Plaintiff takes issue with the ALJ pointing out that she did not seek treatment until three days after she suffered a spinal injury due to a motor vehicle accident in early August 2006. See AR 23. To the extent the ALJ relied on this statement to discount plaintiff's credibility he erred, given that it appears plaintiff did seek treatment, albeit from a chiropractor rather than a medical doctor, during that three day period. See AR 179 (noting plaintiff tried ibuprofen and went to see chiropractor on morning following accident); see also AR 161; 175; 177 ("She has been going to the chiropractor daily since her accident"). Indeed, there is nothing in the record to indicate that going to a chiropractor was inappropriate under the circumstances or otherwise shows a lack of desire or need for treatment.

The undersigned further agrees the ALJ erred in making the following findings regarding treatment:

> Dr. [Hoang N.] Le[, M.D.,] recommended cervical spine surgery for her neck
> pain as early as March 12, 2007. However, the claimant did not have surgery

REPORT AND RECOMMENDATION - 13

> until February 2008 which was paid as part of an insurance settlement from her motor vehicle accident. She testified at the hearing that this was because she did not have medical insurance. However, she also stated she had been receiving health coverage from the State of Washington for low income individuals.

AR 25. As noted by plaintiff, the record contains numerous references to the fact that she did not have insurance coverage both before and after surgery was recommended. See AR 174, 224, 234, 238, 353; but see AR 161. Although plaintiff did report in late April 2007, that she had "basic health" and that such "insurance should pay for all of" her "medical bills" (AR 242), subsequent reports indicate she had no such coverage (see AR 224, 234, 238). Indeed, one late September 2007 progress note stated as follows: "Waiting for surgery on her neck, no insurance." AR 224. In late October 2007, plaintiff reported that they were "having to negotiate with the hospital for pricing because it [was] cash pay" in terms of the surgery, and were "looking at mortgaging their house" for that purpose. AR 223. As such, it is not at all clear plaintiff had health insurance or sufficient financial resources to pay for surgery prior to the date it was actually performed. See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it).

The ALJ next discounted plaintiff's credibility in part due to her activities of daily living. See AR 25. To determine whether symptom testimony is credible, the ALJ may consider daily activities. Smolen, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, they can "meet the threshold for transferable work skills." Id. Second, they can "contradict his [or her] other testimony." Id. In regard to the first ground, the ALJ may reject a claimant's testimony if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work

setting." Smolen, 80 F.3d at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, though, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the ALJ's recitation of her activities of daily living is misleading.  In his decision, the ALJ noted plaintiff reported going on walks, driving with her spouse, walking the dog, shopping for 45 minutes once or twice a week, doing crossword puzzles, taking care of her home, doing wood sculpture and rock polishing seven days a month, performing household chores such as laundry, dusting and vacuuming, attending Bingo games once a month, and paying bills. AR 25.  The undersigned agrees these activities and the descriptions thereof in the record do not necessarily show an ability to perform household chores for a substantial part of the day or that such activities are transferable to a work setting (see AR 86, 95, 101-08, 110, 113, 119, 190, 335-36, 385), and therefore it seems the first ground in Orn is not satisfied here.  Nor do those activities appear to contradict her symptom testimony.  Accordingly, here too the ALJ erred in discounting plaintiff's credibility for this reason.

The ALJ also discounted plaintiff's credibility in part because she had "not been fully compliant with prescribed treatment." AR 25.  Specifically, the ALJ stated that "[a]lthough she reported to Dr. Powell in June 2009 that she [has] been taking her pain medications as prescribed since her substance abuse treatment, she testified at the hearing that she has continued to use marijuana intermittently after her medical marijuana card expired." Id.  While plaintiff points to the fact that she testified at the hearing that she continued to do so because she could not afford to have her card renewed (see AR 375), the record does not reflect this (see AR 207 (noting she reported having had medical license for marijuana, but also reporting not needing it any longer while still smoking sometimes); 211 (same); 243 (same)).  Accordingly, the undersigned cannot

say the ALJ was remiss in discounting plaintiff's credibility on this basis.  See Allen, 749 F.2d at

579 (court may not reverse ALJ's credibility determination where that determination is based on

contradictory or ambiguous evidence).

Plaintiff challenges four more reasons the ALJ gave for discounting her credibility, but

the undersigned finds each of them to be valid.  First, plaintiff argues the ALJ erred in making

the following two findings:

> . . . The claimant testified at the hearing that the unexpected death of her
> mother in January 2008 resulted in increased symptoms of depression.
> However, the record documents little mental health treatment during the
> period at issue and medical records dated February 2008 reveal she declined
> treatment with antidepressant medication offered by Kelly Bell, ARNP
> (Exhibit 13F/194). . . .

Tr. 24.  The undersigned finds no error here.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

2005) (upholding discounting of claimant's credibility in part due to lack of consistent treatment,

and noting that fact that pain was not sufficiently severe to motivate claimant to seek treatment,

even if she had sought some treatment, was powerful evidence regarding extent to which she was

in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure

to request serious medical treatment for supposedly excruciating pain); Fair v. Bowen, 885 F.2d

597, 603 (9th Cir. 1989) (failure to assert a good reason for not following prescribed course of

treatment can cast doubt on the sincerity of claimant's testimony).

Plaintiff argues the ALJ failed to take into account her inability to afford mental health

treatment.  But while, as discussed above, the record does show problems in obtaining insurance

coverage relating to her neck surgery and other non-medication-related treatment, and while it is

clear plaintiff has suffered from a lack of financial resources to pay for medical care overall, it

also is clear she has been able to obtain medication – as well as some other forms of treatment –

despite such lack of resources, and has received significant consequent relief therefrom.  See AR

REPORT AND RECOMMENDATION - 16

1  174-76, 189, 206, 208, 210, 213, 216-17, 220-22, 224, 227, 230, 233, 235, 237, 240, 243.  Thus,

2  the ALJ properly noted this as a basis for discounting plaintiff's credibility.

3        Next, plaintiff argues that nothing in the medical records from February 2008 showed she

4  declined treatment with antidepressant medication, and that the ALJ took that reference out of

5  context, as she had tried many such medications over the years and took them regularly unless

6  she could not afford them.  But as just discussed, despite a lack of financial resources and

7  insurance coverage at times, plaintiff was able to obtain medications, which often resulted in her

8  receiving significant relief therefrom.  In addition, the fact that she did take them – particularly in

9  light of her financial situation – makes her refusal to do so here all the more damaging in terms

10  of her credibility, given that also at the time, Ms. Bell expressly noted that although "she would

11  probably benefit from an antidepressant," plaintiff did "*not want to go there at this point*." AR

12  217 (emphasis added).  Plaintiff asserts that Prozac was listed as one of her medications at her

13  next mental health appointment with Ms. Bell, but as defendant correctly notes, in fact that list of

14  medications related to the same appointment. See AR 216-17.[4]

15        The last two reasons the ALJ provided for discounting plaintiff's credibility are set forth

16  in relevant part in his decision as follows:

> The claimant's credibility is undermined by other factors.  The record contains
> inconsistencies and many different versions as to why she stopped working in
> September 2005.  The claimant reported to . . . [Dr.] Mecouch, D.O., in May
> 2007 that she "had a very heavy opiate addiction" and was getting
> medications at her job, "taking upwards of twenty five daily of Percocet and
> Vicodin for over three months." (Exhibit 11F/69).  She reported to Dr.
> Mecouch that she had stopped working as a nurse at a rehab nursing home
> "when she gave up her nursing license secondary to her opiate difficulties"
> (Exhibit 11F/69).  The claimant reported to Nurse [Scott] Pecora[, PMHNP,]
> in October 2008 that she had not worked in two years and had "let her
> (nursing) license lapse" (Exhibit 13F/205).  There is no indication that she

---

[4] Indeed, it seems the ALJ included the wrong date in his decision, as both AR 216 and AR 217 appear to concern the same May 15, 2008 appointment. See id.

informed Nurse Pecora, of her history of diverting narcotics from her employer. The claimant reported to Dr. Powell in May 2009 that she left her job due to stress and did not divulge her history of diverting narcotics. She also reported she was unable to hold up the oxygen tanks and the patients and she had difficulty talking on the phone (Exhibit 14F/218). Dr. Powell noted that Dr. Mecouch's report revealed that the claimant had received substance abuse treatment related to diverting medications. The claimant told Dr. Powell that she had received substance abuse treatment at Kaiser "about ten years ago . . . for abusing pain pills". However, records from Kaiser Permanente reveal she was being treated for opioid dependence in April 2005 (Exhibit 10F/63). In a mental health evaluation performed at that time it was reported, "She is very devastated by her job being in jeopardy, which she values very much" (Exhibit 10F/62). The claimant initially testified at the hearing that she stopped working in September 2005 because she could no longer handle the stress and pain of working. She stated she had seen "too many" many [sic] patients die at the facility, including her mother-in-law and her grandmother. She later acknowledged that her nursing license had been suspended for five years for diverting narcotics from her employer at a convalescent center. She stated she was unable to handle the psychological stress of working with other nurses who she indicated were talking about her situation and were resentful because they felt she had gotten "promoted" to an easier desk job because of her nursing license suspension.

AR 24-25. Plaintiff argues the statements regarding why she stopped working noted by the ALJ are not inconsistent. But while plaintiff attempts to reconcile those statements, the ALJ did not err in determining them to be inconsistent, and indeed, a review of those statements in the record supports that determination. See AR 190 ("She stopped [working] in September of 2005 when she gave up her nursing license secondary to her opiate difficulties."); 337 ("She reports leaving [her] job due to stress and added that she could not physically hold up the O2 tanks and the patients."); 380-81 (testifying she stopped working due to stress from other nurses being mad because of her perceived promotion). In any event, to the extent that those statements are ambiguous or can be interpreted in more than one rational way, the Court may not reverse the ALJ's credibility determination. See Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, ALJ's decision must be upheld; court may not reverse ALJ's credibility determination where it is based on contradictory or ambiguous evidence).

REPORT AND RECOMMENDATION - 18

In terms of the ALJ's comments concerning the inconsistencies in her statements about her substance abuse history, plaintiff argues it does not appear that she "was attempting to hide the facts of her substance abuse from Dr. Powell since he was already aware of them," and that "[t]he reference to ten years appears to be nothing more than an error on the part of [her] or Dr. Powell in transcribing his notes." ECF #18, p. 16. As to plaintiff's first point, what affects her credibility here is the fact that she herself was not consistent in what she reported regarding her substance abuse. Second, although plaintiff posits that the inconsistencies in her report to Dr. Powell were nothing more than an error on either of their parts, nothing in the record supports her interpretation of this evidence. Accordingly, the undersigned finds the ALJ's interpretation was rational and therefore deems it to have been proper.

As discussed above, not all of the reasons the ALJ provided for discounting plaintiff's credibility were proper. Nevertheless, the fact that some of the reasons for doing so were not proper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall, as it is in this case for the other proper reasons the ALJ gave. <u>Tonapetyan</u>, 242 F.3d at 1148.

III.   <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process,"[5] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or

---

[5] As indicated, defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See</u> <u>id.</u>

she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the residual functional capacity to perform light work, which included being able to "**walk, sit, or stand six hours each of an eight-hour workday**," except that she would be "**limited to frequent fine manipulation**," she could have "**only occasional contact with the public**" and she needed "**to have reasonable access to bathroom facilities**." AR 22 (emphasis in original). Plaintiff argues the ALJ omitted significant mental and physical limitations, such as a limitation to less than full-time simple, low stress work with manipulative limitations, a sit/stand option, frequent rest breaks, and unscheduled work loss due to a combination of physical/psychological pain, depression and anxiety.

As discussed above, however, the ALJ did not err in evaluating the medical evidence in the record regarding plaintiff's physical impairments and limitations – nor did he err in assessing plaintiff's credibility – and, therefore, he was not required to adopt any of the additional physical limitations plaintiff alleges he should have adopted here. As for the additional alleged mental limitations being alleged, while, also as discussed above, the ALJ erred in evaluating the medical evidence in the record from Drs. Powell, Peterson and Eather, it is not at all clear their opinions

or any of the other medical evidence in the record supports adoption thereof. Rather, remand for further consideration of these issues is warranted.

IV. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 391. In response to that question, the vocational expert testified that an individual with those limitations – and who had the same age, education and work experience as plaintiff – would be able to perform other jobs existing in significant numbers in the national economy. See AR 391-93. Based on the vocational expert's testimony, the ALJ found plaintiff

to be capable of performing other jobs existing in significant numbers in the national economy, and therefore not disabled at step five. See AR 27-28.

Plaintiff argues that when asked whether the hypothetical individual could perform any competitive work with just one of the functional limitations alleged above, but not included in the ALJ's RFC assessment, the vocational expert testified that such an individual would not be able to do so. As discussed above, though, the ALJ did not have to adopt any of the additional alleged physical limitations. In addition, only two additional mental limitations were posed to the vocational expert – a need to miss work twice a month on an unscheduled basis and to leave work on unpredictable occasions (see AR 393-94) – both of which the vocational expert testified would preclude the ability to sustain employment (see id.). Again, however, it is not at all clear that either limitation is supported by the substantial evidence in the record. Accordingly, remand is the proper course of action to take in this case.

Lastly, plaintiff claims that one of the jobs the vocational expert identified that she could do – housekeeper – is classified as being heavy work by the Dictionary of Occupational Titles ("DOT"), and therefore is precluded by the ALJ's own residual functional capacity assessment. Defendant agrees that job would appear to be so precluded, and accordingly the undersigned so finds as well. Plaintiff goes on to argue that the other jobs identified by the vocational expert are precluded as well by her pain-related neck, arm and hand limitations, and by her difficulty with concentration and handling stress associated with production work. Once more, though, given the ALJ's proper evaluation of the medical evidence in the record concerning plaintiff's physical impairments and limitations, preclusion on this basis is not warranted. In addition, since again it is unclear exactly what plaintiff's remaining mental functional limitations are, it is far from clear that preclusion on that basis is warranted as well.

REPORT AND RECOMMENDATION - 22

V.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations, her residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is warranted.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the Court should reverse defendant's decision and

REPORT AND RECOMMENDATION - 23

remand this matter further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 22, 2011**, as noted in the caption.

DATED this 1st day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24